### 7758. COX *v.* THE STATE.

1. While, under the provisions of article 6, section 5, paragraph 1 of the constitution of this State, in any county where there is a city court, the judge of that court and of the superior court of the county may

"preside in the courts of each other in cases where the judge of either court is disqualified to preside," no authority is conferred either by the constitution or by statute upon the judge of a city court to originate a proceeding in a superior court by assuming to act as the judge of the superior court.

2. An extraordinary motion for a new trial institutes an entirely new case, requiring discretionary action on .the part of a judge having jurisdiction thereof to bring it into actual existence as a cause in the courts.

(a) The granting of a rule nisi by a judge having authority, upon an extraordinary motion for a new trial, filed at the time contemplated by law, amounts to a grant of authority to file the same, and is as effectual as if the permission had been expressly conferred by a special order or by precise recitals in the rule nisi itself.

·(b) In a county where there is a city court, the judge of that court, when the judge of the superior court in whose circuit the county is included is disqualified because of relationship, can not assume to act as a judge of the superior court and grant a rule nisi in an extraordinary motion for a new trial, and thereby authorize or ratify the filing of such a motion in the superior court, and thus originate a proceeding in that court.

3 Where an extraordinary motion for a new trial in the superior court is presented to a judge of a city court, who signs the rule nisi, the entire proceeding being void ab initio, the judgment of a judge of the superior court dismissing the same will not be reviewed by this court.

DECIDED FEBRUARY 2, 1917.

Conviction of manslaughter; from Mitchell superior court—Judge Thomas. May 27, 1916.

*Little, Powell, Smith & Goldstein, Charles Watt Jr., Pottle & Hofmayer,* for plaintiff in error. *R. C. Bell, solicitor-general, F. A. Hooper & Son, Johnson & Warren, W. H. Haggard,* contra.

· WADE, C. J. At the April term, 1915, of the superior court of Mitchell county T. U. Cox was convicted of voluntary manslaughter, the honorable W. E. Thomas, judge of the superior courts of the Southern circuit, presiding on account of the disqualification of Judge E. E. Cox of the superior court of that county. A motion for a new trial was overruled by Judge Thomas, and his judgment was thereafter affirmed by this court (17 *Ga. App.* 727, 88 S. E: 214), and the remittitur made the judgment of the lower court. During the April term of Mitchell superior court counsel for T. U. Cox requested Judge Cox, who was then presiding, to allow the honorable R. D. Bush, judge of the city court of Camilla in Mitchell county, to take the bench and preside as a judge of the superior court for the purpose of passing

upon a disqualified case. Judge Cox physically yielded the bench, whereupon Judge Bush assumed it; and, without any request from Judge Cox to preside therein, an extraordinary motion for a new trial was presented to Judge Bush in behalf of the said defendant, and, Judge Cox having entered thereon the fact of his disqualification on account of his relationship to the movant, Judge Bush thereupon, over objection by the solicitor-general, granted a rule nisi ordering the solicitor-general to "show cause before the court at the court-house at Camilla, Georgia, on the 6th day of May, 1916 (to which time the court stands open for the purpose of trying case), why the new trial should not be granted." The bill of exceptions recites that "on the last-mentioned date [May 6], the superior court of said county being still in session, movant appeared for the purpose of presenting said motion to Judge Bush, but on said day and date his honor Wm. E. Thomas, judge of the superior courts of the Southern circuit, appeared in court and went upon the bench and undertook to take jurisdiction of said motion," announcing in substance that he had been requested by Judge Cox, the regular presiding judge of the said superior court, to preside for him upon that date in certain cases in which Judge Cox was disqualified, among which cases was the extraordinary motion for a new trial filed by T. U. Cox. Judge Thomas further announced that before going upon the bench he had discussed this extraordinary motion with Judge Bush, the judge of the city court of Camilla, and the latter had stated in substance that he had no personal desire to hear and determine the motion, but wished only to discharge his duty under the law, whatever that might be; that "Judge Bush did not decline to exercise jurisdiction in the matter, but simply stated that he did not personally care to act upon the motion;" and thereupon Judge Thomas announced that for the reasons stated by him he would take jurisdiction of said motion, and, over the objection of counsel for movant, he assumed such jurisdiction, called the case, and set it down for a hearing before him at a future date, before the next regular term of the court. After Judge Thomas had vacated the bench and left the court-house, Judge Bush again took the bench, assumed jurisdiction of the case, and set it for a hearing at the next term of Mitchell superior court, over objection by the solicitor-general as to his authority so to do. When the cause came on to

be heard before Judge Thomas at the time and place set by him, counsel for the movant appeared, "solely for the purpose of making a special appearance and objection to the Honorable William E. Thomas taking jurisdiction in said case, and to object to said motion being heard and determined at this time and place, because of its having been continued [by the subsequent order of Judge Bush] to the October term, 1916, of said court." Judge Thomas overruled the objections of counsel for movant, and thereafter sustained a motion, previously filed on April 13, 1916, by the solicitor-general, to dismiss the extraordinary motion for a new trial. The motion to dismiss the extraordinary motion was urged upon the grounds: that the judge of the city court of Camilla was without authority or jurisdiction to pass any order in the nature of a rule nisi therein, and that such an order signed by him, which required the solicitor-general to show cause why the motion should not be granted, was absolutely null and void; that the motion, being an extraordinary motion, could not be entertained by any court or be filed of record until it was first judicially determined whether or not it set forth good and sufficient reasons why the same had not been made during the term at which the trial was had, or why the grounds thereof had not been set forth in the original motion for a new trial filed at the term when the trial was had, and the judge of the city court of Camilla was without authority to assume jurisdiction over it for the purpose of granting a rule nisi or passing upon the reasons why the grounds of the motion were not incorporated in the original motion; that the said extraordinary motion did not constitute a case pending in the superior court of Mitchell county until a rule nisi had been granted thereon and it had been judicially determined by the court whether the motion might be filed at a term subsequent to the trial term; and the judge of the city court of Camilla was without authority or jurisdiction to preside in the superior court in the cause until the case had been filed in court after an adjudication upon the question whether it should be filed or not, and until the motion became a case in court by filing; that the motion had never been ordered filed by a superior court or any other judge of competent jurisdiction, and the filing thereof without such an order was ineffective, and the motion, therefore, was not a case in court and was subject to be dismissed and stricken from the superior court; that,

the motion having·been set down for hearing and determination at Valdosta on May 27, 1916, before Judge Thomas, of the superior courts of the Southern circuit, by an order duly passed by him on May 6, 1916, in open court at Camilla, at the April adjourned term, 1916, of Mitchell superior court, while presiding therein by request of the judge of that court, and counsel for the movant T. U. Cox appearing before Judge Thomas on said May 27, 1916, solely for the purpose of insisting upon his disqualification to preside therein, and, after such objections had been overruled, declining to present his motion to the court for hearing, and refusing to offer it to the court for adjudication on the merits, or to offer any evidence in its support, and wholly refusing to prosecute it before the court, the motion should be dismissed for want of prosecution.

To the judgment dismissing the extraordinary motion the defendant excepts, counsel for the movant insisting that Judge Bush, "having assumed jurisdiction of said motion, had full power and authority to hear and determine the same," and that Judge Thomas erred in refusing to hold that he was himself disqualified to act upon the motion, and erred in disposing of it on May 27, 1916, and in not continuing it until the October term, 1916, of Mitchell superior court, in accordance with the order granted by Judge Bush, after the date May 27 had been fixed by Judge Thomas.

1.    The authority of the judge of a city court to preside in cases in the superior courts of this State is derived from the following provision of the constitution: "In any county within which there is, or hereafter may be, a city court, the judge of said court and of the superior court may preside in the courts of each other in cases where the judge of either court is disqualified to preside." Article 6, section 5, paragraph 1, of the constitution of Georgia (Civil Code, § 6519). At first blush it might appear that the construction of this part of the constitution is necessarily involved in the decision of this case. The amendment to the constitution adopted in 1916 provides that the Supreme Court shall have jurisdiction "in all cases that involve the construction of the constitution of the State of Georgia or of the United States, or of treaties between the United States and foreign governments; in all cases in which the constitutionality of any law of the State of Georgia or of the United States is drawn in question," etc. It is apparent that if

the Supreme Court has jurisdiction in this case, under the above-quoted provision of the amendment, it must be because the case is one that involves the construction of the constitution of Georgia. It is therefore of interest first to determine when a case pending in this court may be said to involve a construction of the constitution of the State, within the meaning of this provision of the amendment. The original amendment creating the Court of Appeals provided that this court should exercise certain jurisdiction "except that where, in a case pending in the Court of Appeals, a question is raised as to the construction of a provision of the constitution of this State or of the United States, or as to the constitutionality of an act of the General Assembly of this State, and a decision of the question is necessary to the determination of the case, the Court of Appeals shall so certify to the Supreme Court," and the last-named court would thereupon determine the question. The language of the amendment of 1916, conferring jurisdiction upon the Supreme Court in all cases (whether coming on writs of error to the Court of Appeals or to the Supreme Court) "that involve the construction of the constitution," is apparently equivalent to the language employed in the amendment creating the Court of Appeals which required that court to certify to the Supreme Court a question raised in any case as to the construction of a provision of the constitution, where a decision of the question was necessary to the determination of the case. Speaking broadly, since under our form of government the constitution of the United States and the constitution adopted by the sovereign people of this State together furnish the foundation upon which the entire structure of our laws rests, and consequently the one constitution or the other is "involved" in every case coming before the trial courts for determination, or before the appellate courts for review, it is obvious that neither the provision in the original amendment establishing the Court of Appeals and requiring that court to certify to the Supreme Court questions involving the construction of a clause of the constitution where necessary for a determination of a case, nor the provision in the amendment of 1916 conferring upon the Supreme Court exclusive jurisdiction "in all cases that involve the constitution of the State of Georgia or of the United States," was intended to cover cases where *no distinct question was raised in the record* as to the proper meaning

or construction of the constitution of the United States or of this State, and where the right claimed or denied depended upon a plain and unambiguous provision of either constitution.

To hold that the Court of Appeals must lose jurisdiction over all cases where any right or privilege asserted or denied depended for its allowance or refusal upon the construction of plain and unambiguous language in the constitution, though no question as to the construction of such constitutional provision was raised, would be practically to enable any litigant (not relying upon a construction of the constitution to support his contentions) to select the appellate forum in which he might prefer his case to be determined. If the mere insistence that a particular constitutional question was involved would be sufficient to give exclusive jurisdiction over a case to the Supreme Court, it would be easy to inject into any case a constitutional question of that kind, by contending that some perfectly plain provision of the constitution, which perhaps had not been previously construed by the Supreme Court, because susceptible of but one construction, should have some special or strained construction given to it, and thus create a constitutional question in the case. The practical effect of the language employed by the amendment of 1916 is apparently to confer automatically upon the Supreme Court exclusive jurisdiction over every case coming to that court or to this court which properly involves the construction of the constitution of this State or of the United States, instead of permitting this court to certify the constitutional questions involved, while retaining the case itself for decision. However, it is not for the Court of Appeals to construe an amendment to the constitution any more than to construe the original constitution itself, and hence what is said on this particular point is merely remarked in passing. The able discussion by Judge Powell of the question when a construction of the constitution is involved, which may be found in the case of *Fews* v. *State,* 1 *Ga. App.* 122 (58 S. E. 64), is of interest in this connection, and the following language is especially apropos to the point now under consideration: "A case which involves merely the applicability of a concededly unambiguous clause of the constitution to a given state of facts raises no question of construction. Likewise, where a clause in the constitution has been construed by the Supreme Court as having a certain meaning and

intendment, and such fixed judicial construction is unchallenged, there is still no question raised as to the construction of a clause of the constitution."

Paragraph 1 of section 5 of article 6 of the constitution of Georgia (Civil Code, § 6519) reads as follows: "In any county within which there is, or hereafter may be, a city court, the judge of said court and of the superior court may preside in the courts of each other in cases where the judge of either court is disqualified to preside." There being no statutory provision authorizing the judge of a city court to preside as a judge of a superior court, the paragraph of the constitution quoted above furnishes the only warrant authorizing him so to act, and the authority therein conferred may not be extended by implication. It declares that the judge of a city court may "preside" for a judge of the superior court "in cases" where the judge of the latter court is disqualified to preside. This language is seemingly too plain and unambiguous to require any interpretation or construction, and distinctly authorizes a judge of a city court to *preside* in cases in the superior court, without suggesting in the remotest manner any grant of authority to such a judge to *originate* in his judicial capacity, acting as a judge of the superior court, where the regular judge of that court is disqualified, a proceeding of any kind in the latter court. Though, measured by the rule laid down in the *Fews* case, supra, it seems evident that the language employed in this paragraph of the constitution is too plain to involve or require interpretation, and, therefore, that no constitutional question is "involved," even if the question were distinctly and clearly made in the record as to the proper construction of this section, it is not necessary to declare what its plain meaning is, for the Supreme Court has already construed this section of the constitution in a case which in principle decides the precise point in this case. So that, under the ruling in the *Fews* case, supra, that "if the particular question of construction sought to be raised has been passed upon directly by the Supreme Court, such question will not be certified to the Supreme Court for repetition of its former decision," it can not be said that a present construction of the constitution is involved. In *Edmondson* v. *State, 123 Ga.* 194 (51 S. E. 301), the Supreme Court held: "Neither under the act of 1885 (Acts of 1884-5, p. 475, § 30), nor under the constitutional

provision allowing the judge of the superior court to preside in the city court in cases where the judge of the latter is disqualified to preside, did the judge of the superior court of the Macon circuit have authority to administer an oath and attest an affidavit made as a basis for an accusation in the city court of Macon, on the ground that the judge of the latter court was disqualified from attesting the affidavit because of relationship to the defendant. A judgment based upon such an affidavit and accusation should be arrested on motion." It will be observed that there is a distinct ruling in that case that a judge of the superior court had no authority to take and attest an affidavit upon which an accusation was based in a city court, where the judge of the city court was disqualified from acting by reason of relationship to the defendant. As was said by Mr. Justice Lumpkin, "this is not *presiding* [italics ours] in a case in the city court, within the meaning of the constitution." The Supreme Court, therefore, has construed this paragraph of the constitution, and has declared that the authority conferred by it upon a judge of a superior court is only the authority to "preside" in a city court, and has distinctly ruled that the judge of the superior court could not attest an affidavit which furnished the basis for an accusation in a city court, or in other words do judicially anything necessary to originate a proceeding in a city court. If the authority thus conferred upon a judge of the superior court is merely authority to preside in a city court, equally true must it be that the authority it confers upon a judge of a city court is merely to preside in a superior court. In other words, the effect of the ruling by the Supreme Court is that neither a judge of a superior court nor a judge of a city court can do anything but preside for each other, and that neither can originate a proceeding in the court of the other by assuming to act as a judge of that court.

2. Without attempting any extended discussion of the rules obtaining where an ordinary motion for a new trial is made, it may be said that as far back as the case of *Graddy* v. *Hightower,* 1 *Ga.* 252, it was held that "When the term of the court at which the judgment was rendered has passed, and no application made and recorded at that term, the record in the cause having been finally made up, the court has no power to grant a new trial, except in some peculiar and extraordinary cases." In *Cox* v. *Hill-*

*yer,* 65 *Ga.* 57, and numerous cases since, the Supreme Court has clearly indicated what is generally necessary to constitute an extraordinary motion for a new trial presented at a later term than the term at which the trial was had. One well-recognized difference between an ordinary motion for a new trial and an extraordinary motion for a new trial is that the former may be filed as a matter of right, and the rule nisi is granted therein as a matter of course by the presiding judge; whereas in an extraordinary motion for a new trial, the trial judge should exercise his discretion and may refuse to entertain the motion and breathe into it the breath of life by granting the rule nisi, unless it appears to him that enough is therein set forth to warrant at least a stay of proceedings and call for a full and more thorough consideration. In *Harris* v. *Roan,* 119 *Ga.* 379 (46 S. E. 433), it was said that, "when an alleged extraordinary motion for a new trial is entirely without merit, it is proper for the judge to decline to entertain the same and to refuse to grant a rule nisi thereon," and it was further held that the Supreme Court will not by mandamus compel a judge to certify to a bill of exceptions assigning error upon his refusal to entertain an extraordinary motion for a new trial and grant a rule nisi thereon when it appears that the motion is without merit. As was said by the writer in *Griffin* v. *Brand,* 18 *Ga. App.* 643 (90 S. E. 90), in his special concurrence, "Of course, where the judge declines to entertain an extraordinary motion for a new trial which is entirely without merit, the Supreme Court or this court will not by mandamus compel him to certify a bill of exceptions assigning error upon such refusal." See cases there cited.

From *Harris* v. *Roan,* supra, as well as from many other cases, it is apparent that the trial judge should exercise his discretion in granting or refusing a rule nisi on an extraordinary motion for a new trial. As was said by Powell, J., in *Seaboard Air-Line Ry.* v. *Reid,* 6 *Ga. App.* 18, 20 (63 S. E. 1130), "Where the party has had one review by the higher court and a decision has been made against him, and he seeks to obtain from the judge of the court below a second bill of exceptions, the reviewing court will make a preliminary examination into the error complained of, and will not grant the mandamus nisi unless the contentions of the applicant present such a show of merit as to raise a fairly debatable question as to their validity." From the statement of facts in the case

last quoted from it appears that after examining the application for an extraordinary motion for a new trial, the trial judge refused to grant a rule nisi; a bill of exceptions complaining of this ruling and judgment was then presented to him, which he declined to certify, and application for a mandamus nisi was made to this court, and the application was refused. So it is clear, under that ruling also, that the judge granting or refusing a rule nisi on an application for an extraordinary motion for a new trial should exercise his discretion. See also *New England Mortgage Security Co.* v. *Collins,* 115 *Ga.* 104 (41 S. E. 270). It was said in *East Tennessee &c. Railroad* v. *Whitlock,* 75 *Ga.* 77, 82, that "The motion for new trial in extraordinary . . cases was intended in a great degree to take the place of a bill in equity for new trial;" and since the judge to whom such an application is made should exercise his discretion, or in other words, exercise a judicial and not a mere clerical or administrative function in granting or refusing a rule nisi thereon, it can not be logically insisted that such a motion has any force or vitality until such discretion has apparently been exercised, or until a judge *having authority* under the law to vitalize or originate a proceeding in the court in which the motion is made has judicially acted thereon. As was determined in the *Edmondson* case, supra, *originating* a proceeding in the superior court and *presiding* in a case in that court are entirely different. Since the judge of the city court of Camilla had no authority to originate a' case in the superior court of Mitchell county by assuming to act as a judge of the superior court, the proceeding based upon his action in granting a rule nisi on an extraordinary application for a new trial was void *ab initio;* and therefore the action of the judge of the superior court who undertook to dismiss such a wholly void proceeding was not error and can not furnish sufficient ground for complaint in this court, regardless of the precise facts under which he assumed jurisdiction. However, from the record it would appear that if the rule nisi on the extraordinary motion had been in fact granted by one having authority, the judge of the superior court who thereafter set it for a hearing and dismissed the motion would have had, and should have retained, jurisdiction to pass upon the motion.

We think it obvious that the original case which had been tried and determined and brought to this court, and in which the judg-

ment of this court had been made the judgment of the lower court, was certainly not pending at the time the extraordinary motion was presented to the judge of the city court; and therefore that judge had no authority to commence a new case in the superior court by signing a rule nisi; but if the other horn of the dilemma should be selected, it is clear that, under the facts in the record, the judge of the superior court of an adjoining circuit, who had been requested by the judge of the superior court of Mitchell county to preside in the case, and had accordingly presented himself and assumed jurisdiction, could not be deprived of his jurisdiction by a subsequent order, passed by another judge, not requested to preside, while he was still in office, able and ready to dispose of the motion.

Furthermore, if the attempted extraordinary motion in this case was merely an additional proceeding in the original case, and was therefore a "pending" case when the judge of the city court was requested by counsel for plaintiff in error to assume jurisdiction of the same (as argued by counsel for movant), that judge was not requested to preside by the disqualified judge of the superior court, and there is no existing provision of law which would allow one of the parties in a pending case to select the judge to pass thereon.

*Judgment affirmed.   Jenkins and George, JJ., concur.   (Luke, J., disqualified.)*