76168. THE STATE v. McCLOUD.
(370 SE2d 831)

BEASLEY, Judge.

Defendant McCloud was charged with four counts: possession of cocaine with intent to distribute, OCGA § 16-13-30 (b); possession of less than an ounce of marijuana, OCGA § 16-13-2 (b); operating a motor vehicle with a suspended license, OCGA § 40-5-121 (a); and operating a motor vehicle without effective insurance thereon, OCGA § 33-34-12 (b).

The court granted defendant's motion to suppress the drug evidence. The undisputed evidence is as follows: Police officers had been called to the high school where defendant worked as a bus driver on January 14, 1987 to investigate the theft of checks and cash from the school vault. Defendant was a suspect in that theft, although officers did not have probable cause to arrest him. As part of the theft inves-

tigation, the officers had checked the record on defendant's driver's license the day before and learned that it was suspended. They also were aware that defendant had been taken off the school bus the previous day because he had no valid driver's license. About two or three minutes before the officers left the school, Mr. Brown, a school official, told them that he had information that defendant had sold drugs that day and had drugs in his car.

When the officers saw defendant driving the car, they called a marked police car and advised that defendant was driving with a suspended license. Officer Taylor stopped defendant, verified the suspended license information, and learned upon inquiry from defendant that the car had no insurance. Defendant was arrested for the two traffic offenses, his car impounded, and an inventory search of the automobile was conducted. Under the driver's seat, the officers found a plastic cassette tape container which held a plastic bag with rice and five tiny ziplock bags inside. The small bags contained a white powder which proved to be cocaine.

Defendant was then charged with the cocaine offense. A warrant was obtained for defendant's residence. A set of scales with white residue, a quantity of the small ziplock bags, and a small bag of marijuana were found there.

Defendant filed a motion to suppress in reliance on the federal Fourth Amendment, Ga. Const. 1983, Art. I, Sec. I, Par. XIII, and OCGA § 17-5-1 "et seq." As to the latter, it probably meant § 17-5-2, relating to inventory of items seized, as it is these two provisions in the statutory series which govern searches without warrants. The motion contended that there was no warrant or probable cause; there was no arrest warrant; no crime was committed in the officers' presence; and the search took place before the arrest. There was no evidence of this latter ground presented at the hearing, but in connection with the former, defendant focused on the federal ground and as to it additionally cited to the court *United States v. Miller*, 821 F2d 546 (11th Cir. 1987) and *United States v. Smith*, 799 F2d 704 (11th Cir. 1986).

The court found essentially the foregoing facts and "that the Defendant would not have been stopped by the officers absent the information given by a school official who approached them on the date of the stop and arrest and related that the Defendant 'had sold drugs that date and had drugs in his car.'" The court also considered important "that in the four-count special presentment . . . , the first two counts deal with drugs and the last two deal with traffic offenses." On these findings, the court concluded as a matter of law: "This makes the stop and search pretextual and invalid. It appears from the transcript and the court's order that this ruling was based on *Miller* and *Smith*. No independent argument or analysis of de-

fendant's rights under state statutes or Constitution were made. We thus confine our review to the federal constitutional ground.

Initially, it should be noted that *Miller* and *Smith* are not binding on either the trial court or this court. *Head v. State*, 253 Ga. 429, 430 (1) (322 SE2d 228) (1984); *Felker v. State*, 252 Ga. 351, 361 (1 b) (314 SE2d 621) (1984). *Tarwid v. State*, 184 Ga. App. 853 (1) (363 SE2d 63) (1987) which did not involve an observed traffic violation treats *Smith* merely as "instructive." Secondly, the prosecutor's decision as to which counts to place first in the formal presentment or indictment to be voted on by the grand jury says nothing about the police officer's reasoning at the time of the stop and arrest.

There is no doubt that the officers had probable cause to believe that McCloud was driving an automobile with a suspended license. "Probable cause to make a warrantless arrest exists where the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. [Cits.]" *Clark v. State*, 180 Ga. App. 280, 283 (3) (348 SE2d 916) (1986), citing *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE2d 543) (1925). Whatever may have been the motive of those officers, they were fully authorized to call a marked car to stop defendant for this occurring violation. OCGA § 40-5-121 (a). Upon asking for the license and proof of insurance, as he was required to do when asking for the license, OCGA § 33-34-12 (a) (2), Officer Taylor's probable cause arose to believe McCloud also was driving a car without effective insurance on it. At that point, the officers were authorized, if not bound, OCGA § 40-5-122, to take defendant into custody and impound and inventory the car. *Highland v. State*, 144 Ga. App. 594 (241 SE2d 477) (1978), relying on *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976); see also Op. Atty. Gen. 83-5. OCGA § 40-6-206 (d), which became effective April 2, 1987 after the incident here, statutorily authorized the impoundment of an uninsured vehicle. The 1983 Opinion of the Attorney General had advised the Commissioner of Public Safety that such a vehicle could be impounded prior to the statute's enactment.

Since, prior to April 2, 1987, driving an uninsured motor vehicle was not an offense for which a driver's license could be posted in lieu of bail pursuant to OCGA § 17-6-11 (a), amended by Ga. Laws 1987, p. 542, § 3, and since defendant, in any event, had no valid license to post, the officer was authorized to arrest defendant and take him before an appropriate official for posting of cash bail. OCGA §§ 17-4-20; 17-4-23; 17-6-2; 40-13-55 through 40-13-57. This necessitated the inventory search.

The fact that the officer who made the initial stop and the other officers present suspected that McCloud had committed or was com-

mitting other crimes does not alter their authority to make the traffic stop. See *Eisenberger v. State*, 177 Ga. App. 673, 674 (2) (340 SE2d 232) (1986), decided on the federal ground before the *Smith* and *Miller* decisions, and the more recent *Williams v. State*, 187 Ga. App. 409 (370 SE2d 497) (1988), *Coop v. State*, 186 Ga. App. 578 (1) (a) (367 SE2d 836) (1988), and *Whisnant v. State*, 185 Ga. App. 51, 52 (1) (363 SE2d 341) (1988). See also *State v. Sanders*, 154 Ga. App. 305 (267 SE2d 906) (1980).[1] Even if, but for their drug-related suspicion, they would not have effected a stop at that time but had chosen instead to charge the observed motor vehicle violation later, so as not to jeopardize their theft investigation, neither this choice nor its motivation renders the stop invalidly pretextual in violation of a constitutional protection. The stop and search were valid independent of their suspicion regarding drugs, and that is the key. The introduction of the suspicion to the circumstances did not invalidate their actions. They did not have to wait until they had probable cause to arrest for possession of drugs in order to stop and arrest him for driving with a suspended license, a crime which was being committed in their presence. The fact that the accuracy of their suspicion was borne out in the course of a valid search which was bottomed on a different, probable-cause-based and impoundment foundation, does not prohibit the seizure of the drugs.

Once McCloud was arrested and the car impounded, it could be searched. *New York v. Belton*, 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768) (1981); *South Dakota v. Opperman*, supra; *Oswell v. State*, 181 Ga. App. 35 (351 SE2d 221) (1986); *Whisnant*, supra at 52 (2).

The initial search being authorized, there is no "poisonous tree" to consider, in the trial court's words, with regard to those items later seized from the apartment pursuant to a warrant.

We conclude there was no Fourth Amendment violation.

*Judgment reversed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED JUNE 21, 1988.

*Beverly B. Hayes, Jr., District Attorney, Edwin J. Wilson, Assistant District Attorney*, for appellant.

---

[1] We do not assume that the suspicion was not a reasonable one founded on specific and articulable facts or that it may not have been enough itself to have authorized the present stop (see *State v. Brown*, 178 Ga. App. 307, 308 (1) (342 SE2d 779) (1986) and *Radowick v. State*, 145 Ga. App. 231, 233 (1) (244 SE2d 346) (1978), both applying United States Supreme Court authority.) and the search of the passenger compartment of the car (see *Michigan v. Long*, 463 U. S. 1032, 1034 (103 SC 3469, 77 LE2d 1201) (1983)). Nor do we assume otherwise.